**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JAMES WILLIAMS and LAURIE WILLIAMS, | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. 1:12-CV-04382-RWS |
| COLUMBUS BAR ASSOCIATION, | : | |
| Defendant. | : | |

## ORDER

This case comes before the Court on Defendant Columbus Bar Association's Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Venue, and in the Alternative, to Transfer Venue [3] and Plaintiffs' Motion for Leave to File Surreply in Opposition to Defendant's Motion to Dismiss and in the Alternative, to Transfer Venue [12]. After reviewing the Record, the Court enters the following Order.

As a preliminary matter, the Court **DENIES** Plaintiffs' Motion for Leave to File Surreply in Opposition to Defendant's Motion to Dismiss and in the Alternative, to Transfer Venue ("Motion for Leave to File Surreply") [12]. "Neither the Federal Rules of Civil Procedure nor this Court's Local Rules

authorize the filing of surreplies." Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) (internal citations omitted). "To allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." Garrison v. N.E. Ga. Med. Ctr., Inc., 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999) (declining to permit surreply). Rather, surreplies typically will be permitted by the Court only in unusual circumstances, such as where a movant raises new arguments or facts in a reply brief, or where a party wishes to inform the Court of a new decision or rule implicating the motion under review. See, e.g., Fedrick, 366 F. Supp. 2d at 1197 (stating that "valid reason for . . . additional briefing exists . . . where the movant raises new arguments in its reply brief"). In this case, Defendant's reply brief directly addresses arguments raised by Plaintiff in its response brief and does not raise new arguments or facts. Accordingly, a surreply is not warranted and Plaintiffs' Motion for Leave to File Surreply [12] is **DENIED**.

## Background[1]

This case involves trademark infringement and unfair competition claims arising out of the parties' marketing of services to lawyers and law firms. Since

[1] When considering a Motion to Dismiss, the Court accepts as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).

AO 72A
(Rev.8/82)

1997, Plaintiffs James and Laurie Williams (the "Williams") have owned and operated a service known as "LAWYERFINDER," located at the domain "www.lawyerfinder.com." (Compl., Dkt. [1] ¶¶ 9-10.) The Williams assert that they own the common law mark "LAWYERFINDER." (Id. at ¶ 9.) The Williams are residents of Maryland, but regularly conduct business in Georgia. (Id. at ¶ 5.) On June 16, 2000, Plaintiffs filed a trademark application with the United States Patent and Trademark Office ("USPTO") for the mark "LAWYERFINDER," but failed to respond to the Examining Attorney and abandoned the application. (Id. at ¶ 12.)

In 2008, Defendant Columbus Bar Association ("CBA") published the website "www.columbuslawyerfinder.com," bearing the mark "COLUMBUS LAWYER FINDER.COM." (Id. at ¶ 20.) The USPTO registered CBA's marks "COLUMBUS LAWYER FINDER.COM" on October 20, 2009 and "LAWYERFINDER.COM" on March 15, 2011. (Id. at ¶¶ 21-23.)

Plaintiffs assert that they have since filed another federal trademark application, No. 85484175, for "LAWYERFINDER."[2] Plaintiffs claim that

---

[2] When considering a motion to dismiss, the Court may take notice of public records not attached to the Complaint, including, in this case, Plaintiffs' application for the "LAWYERFINDER" trademark, which was filed on November 30, 2011. This does not convert the motion into one for summary judgment. Universal Express, Inc. v. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take

AO 72A
(Rev.8/82)

CBA uses "LAWYERFINDER"[3] in an effort to "advertise, market, and promote its services throughout the country using many of the same channels used by Plaintiff." (Id. at ¶ 35.) According to Plaintiffs, CBA's advertising campaign and its licensing of the "LAWYERFINDER" mark has caused or is likely to cause "confusion among consumers and members of the general public as to the source of the parties' goods and services." (Id. at ¶ 36.) Additionally, Plaintiffs allege that the CBA's use of "LAWYERFINDER" has "begun to swamp the reputation" of Plaintiffs' mark and its surrounding goodwill. (Id.)

The Williams filed this action against CBA on December 19, 2012. The Williams accuse CBA of committing fraud on the USPTO in its application for the "LAWYERFINDER.COM" trademark (Count I), alleging (1) that CBA knew or should have known that "LAWYERFINDER.COM" was identical or confusingly similar to their common law "LAWYERFINDER" mark and "www.lawyerfinder.com" domain name, and (2) that CBA misrepresented that it used its mark in connection with the goods and services identified in its

---

judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. . . . Public records are among the permissible facts that a district court may consider.") (citations omitted).

[3] The marks registered by CBA are "LawyerFinder.com" and "COLUMBUS LAWYER FINDER.COM." In the Complaint, however, Plaintiffs contend that CBA is using the "LAWYERFINDER" mark.

application. (Id. at ¶¶ 42-65.) Additionally, the Williams accuse CBA of trademark infringement under federal and state law (Counts II and IV), based on Defendant's use of the "LAWYERFINDER" mark in conjunction with marketing and licensing its services. (Id. at ¶¶ 66-78, 85-91.) The Williams also allege that CBA violated Georgia statutory and common law prohibiting unfair competition and unfair and deceptive trade practices (Counts III and V). (Id. at ¶¶ 79-84, 92-96.) Finally, the Williams seek cancellation of CBA's marks (Count VI). (Id. at ¶¶ 97-99.)

Defendant moves the Court to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2) or for improper venue under 28 U.S.C. § 1406(a). (Def.'s Mot. to Dismiss, Dkt. [3-1] at 9, 19.) In the alternative, Defendant moves the Court to transfer the case to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a), arguing that the Southern District of Ohio is a more convenient forum. (Id. at 20-24.) Defendant asserts that the action has no connection to the State of Georgia because no party resides in Georgia, the facts giving rise to the dispute did not occur in Georgia, and "none of the witnesses" and "none of the evidence" are located in Georgia. (Def.'s Mem., Dkt. [3-1] at 4.)

AO 72A
(Rev.8/82)

## Discussion

**Motion to Dismiss, or in the Alternative, Motion to Transfer Venue**

A. Legal Standard

Defendant CBA moves the Court to transfer this case to the Southern District of Ohio, pursuant to 28 U.S.C. § 1404(a). This statute provides that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). "The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference." In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (citations omitted). "Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." Id. As is clear from the text of section 1404(a), the Court is to consider three primary factors in determining whether transfer is appropriate: (1) the convenience of the parties, (2) the convenience of witnesses, and (3) the interests of justice.[4]

[4] The Eleventh Circuit Court of Appeals has enumerated other relevant factors that the Court may consider:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the

AO 72A
(Rev.8/82)

B. Analysis

Defendant contends that each of the above factors weighs in favor of transferring this matter to the Southern District of Ohio. First, with respect to convenience of the parties, Defendant notes that neither Plaintiffs nor Defendant are citizens of Georgia. (Def.'s Mem., Dkt. [3-1] at 23-24.) Consequently, Defendant argues, Plaintiffs' choice of forum should be accorded less deference. See Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1355 (N.D. Ga. 2004) ("Plaintiffs' choice of forum . . . is entitled to less weight when none of the parties resides there."). On the other hand, Plaintiffs claim that transfer will simply shift the inconvenience from one party to the other. (Pls.' Mem. in Opp'n, Dkt. [9-1] at 26.)

The Court agrees with Defendant that this factor weighs in favor of transfer. Defendant is a non-profit entity with its sole offices in Ohio. The CBA has no physical presence in Georgia and has never engaged in any

---

> parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

AO 72A
(Rev.8/82)

persistent course of conduct in Georgia. Litigation in Ohio will be significantly more convenient for Defendant and no less convenient for Plaintiffs, who would already be required to travel from Maryland to Georgia to litigate the dispute.

Second, with respect to convenience of witnesses, Defendant argues that the key witnesses are overwhelmingly residents of Ohio. (Def.'s Mem., Dkt. [3-1] at 21-22.) These witnesses will "shed light on the issues of Defendant's creation, registration, and use of the Mark." (Id. at 22.) Defendant argues that transfer to the Southern District of Ohio will not merely "shift the inconvenience from one party's witnesses to another" because Plaintiffs have failed to show that any key witnesses have a connection to the Northern District of Georgia. (Id.) Plaintiffs counter that transfer would be improper because Defendants "have not identified any key non-party witnesses" that would be inconvenienced or could not be compelled to testify in the Northern District of Georgia. (Pls.' Mem. in Opp'n, Dkt. [9-1] at 26.)

Again, the Court agrees with Defendant that the convenience of witnesses (particularly key witnesses) favors transfer to the Southern District of Ohio. See McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1311 (M.D. Ga. 2003) (the focus of the Court should be on the convenience of "key witnesses"). The cost

AO 72A
(Rev.8/82)

of producing live testimony for trial would be significantly lower in Ohio than in Georgia. Furthermore, relevant documents and sources of proof are located in Ohio.

Plaintiffs argue that the interests of justice weigh against transfer, primarily because Defendant is subject to personal jurisdiction in Georgia.[5] (Pls.' Opp'n, Dkt. [9-1] at 24-25.) However, personal jurisdiction and venue are two separate inquiries; the simple fact that the Court may exercise jurisdiction does not satisfy the venue analysis.

In this case, the Court finds that the interests of justice weigh in favor of transfer. Neither party is a resident of Georgia. Key witnesses and sources of

---

[5] The Court agrees that Defendant is subject to personal jurisdiction in Georgia. Under O.C.G.A. § 9-10-91(1), Georgia's long-arm statute, a court can exercise personal jurisdiction over a defendant who "transacts business" in the state of Georgia; the defendant's physical presence in the state is not required. Innovative Clinical & Consulting Services, LLC v. First Nat. Bank of Ames, 620 S.E.2d 352, 355 (Ga. 2005). Here, CBA concedes, *inter alia*, that it sent the ABA informational mailings and communicated with the ABA by email. (Def.'s Reply Mem., Dkt. [10] at 2.) The Court finds that these contacts are sufficient to satisfy the "transacting business" prong of the Georgia long-arm statute. Plaintiffs have also shown that there is a nexus between CBA's contacts with the forum and the litigation. The injuries claimed by Plaintiffs (e.g., trademark infringement) are directly related to CBA's activities in the forum; specifically, soliciting the ABA for its "LawyerFinder.com" service.

AO 72A
(Rev.8/82)

proof are located in Ohio. The events taking place in Georgia are minimal.[6] In short, there is no reason this case should be litigated in Georgia, other than it happens to be the forum chosen by Plaintiffs. However, here, other relevant considerations outweigh the deference that is traditionally afforded to a plaintiff's choice of forum.

Therefore, for convenience and to promote efficiency in the judicial system, the Court finds that transfer to the Southern District of Ohio is warranted. Accordingly, Defendant's motion to transfer venue is **GRANTED**.

## Conclusion

In accordance with the foregoing, the Court hereby **DENIES** Plaintiffs' Motion for Leave to File Surreply in Opposition to Defendant's Motion to Dismiss and in the Alternative, to Transfer Venue [12] and **GRANTS** Defendant Columbus Bar Association's Motion to Transfer Venue [3]. The Clerk shall **TRANSFER** this case to the United States District Court for the Southern District of Ohio.

---

[6] In their Complaint, Plaintiffs allege that CBA has marketed its services "on a national basis" and has targeted a "licensing scheme" to multiple organizations. (Compl., Dkt. [1] ¶ 27.) Plaintiffs name several other locations where allegedly infringing activity occurred, including Cincinnati, New Haven, and Pittsburgh. Therefore, Plaintiffs' alleged injuries are not limited to CBA's activities in Georgia.

AO 72A
(Rev.8/82)

**SO ORDERED**, this 8th day of May, 2013.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)